[Civ. No. 8179.   Fourth Dist., Div. One.   Feb. 27, 1967.]

LAWRENCE HOLZMAN, as Receiver, etc., Plaintiff and Appellant, v. UNITED CALIFORNIA BANK, Defendant and Respondent.

Luce, Forward, Hamilton & Scripps, Edgar A. Luce, Jr. and Theodore W. Graham for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and H. Warren Siegel, Deputy Attorney General, as Amici Curiae on behalf of Plaintiff and Appellant.

Swanwick, Donnelly & Proudfit, Glenn & Wright, Maurice H. Wallbert, Eugene Glenn, John R. Schell and Donald O. Welton for Defendant and Respondent.

FINLEY, J. pro tem.*—This appeal is by plaintiff from a judgment of dismissal.·

## FACTS

On August 24, 1960, the California Commissioner of Corporations issued to Western-America Sports Enterprises, Inc., a corporation (Western), a permit to sell and issue its securities. In January 1961, the permit was amended to provide that all subscription money "shall" be paid to Western and that such money, less one-half of the allowed selling expenses, "shall immediately be delivered . . . and held as an escrow by" defendant-respondent United California Bank (Bank). These funds were to be held by Bank pending further order of the Commissioner of Corporations (Commissioner).

At the time of its selection as escrow holder, Bank was given a copy of the permit issued by Commissioner to Western together with a letter stating that Bank was to send the Division of Corporations a copy of all deposits showing the subscribers' names and number of shares subscribed by each, the amount of money deposited in the escrow account, and the aggregate funds in the account.

This procedure was followed with respect to $163,035 of subscribers' funds, $14,970.50 being deposited in Western's regular checking account pursuant to Commissioner's order.

On March 29, 1961, Commissioner suspended the permit because there had been a diversion of approximately $170,000 of other subscription funds into Western's checking account followed by withdrawals of these funds for unlawful purposes. Commissioner then sued for declaratory relief, an accounting, to enjoin the continued violation of the Corporate Security Law, and to have appellant appointed receiver for Western. Appellant was appointed receiver. The order of appointment provides in part: "That the said receiver be empowered to bring and defend actions in his own name ·as receiver, to take and keep possession of property, to collect

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

debts, to compound for and compromise the same, to make transfers, and generally do such acts as are necessary to marshal the assets of the said corporations, as well as the subscription funds and trust funds entrusted to said corporations; to ascertain their true financial condition, to determine the liabilities of said corporations; and the rights of subscribers therein, and to said impounded funds, and to each other . . ."

Appellant then petitioned and was granted permission by the court to sue Bank. On October 23, 1962, appellant filed his complaint alleging that Bank knew or should have known that the source of the deposits in Western's checking account was trust funds paid in by stock subscribers which should have been deposited in escrow. It is alleged that Bank wrongfully honored checks drawn on the checking account.

Bank demurred generally and specially to the complaint. The court sustained the special demurrer for ambiguity and allowed 10 days to amend, which was done. It is alleged in the amended complaint that Bank knowingly participated in a breach of trust in honoring checks on Western's checking account.

Bank answered the first amended complaint with a denial and affirmatively raised the issue of appellant's standing to sue for money allegedly due subscribers of Western. At the pretrial hearing, the parties agreed to a separate trial on this affirmative defense and furnished a "stipulation as to certain facts for purposes of separate trial on the issue of whether plaintiff is the real party in interest and has the right to sue defendant." The trial was held. The court found appellant was seeking to recover "money claimed to be due subscribers to the stock" in Western; this money *was "owned* by said subscribers" and neither appellant *nor* Western "have any right, title or interest therein"; appellant was not the real party in interest and could not maintain this action. Appellant's action against Bank was ordered dismissed and judgment was entered. Appellant then moved for a new trial, which motion was denied. This appeal followed.

The sole issue before this court is whether appellant as receiver for Western, appointed by the court at the behest of Commissioner, is in legal position, under any theory presented in the pleadings and supported by the stipulated facts, to sue in his own name, and, if successful, to recover from Bank on account of misuse of subscribers' funds.

Respondent Bank denies any such right in appellant on the ground that he is not the real party in interest and is not authorized to bring and maintain such an action either by contract or consent of the subscribers or by enabling statute.

■ At the outset it is pertinent to observe the conclusion of the trial court is premised upon its finding that appellant was seeking to recover from Bank money in which Western had no interest. We have concluded, in accord with the views hereinafter expressed, that this finding is contrary to the evidence and the law. Lacking this finding the judgment of dismissal is without support and must be reversed.

Appellant advances several theories in support of his claimed right to sue Bank on account of any actionable part it played in misuse of the funds paid by the subscribers to Western. Among other things, appellant contends, in substance, that Western had a right to maintain this action because of its fiduciary obligation imposed by law to maintain the integrity of the funds paid to it by the subscribers, and also because of its contingent interest in those funds with a correlative right to maintain them intact. The People of the State of California, acting through the Commissioner and Attorney General, filed two amicus curiae briefs generally supporting appellant's position.

In a field seemingly devoid of precedent which would materially assist in resolving the dilemma presented here, we weigh anchor, so to speak, and set forth on an uncharted sea.

Appellant has characterized the relationship created by the Commissioner's acts as an express trust. An express trust is described in Civil Code, sections 2250 and 2251. Amicus curiae, on the other hand, in presenting the trust theory refer not only to express trust code sections but also to Civil Code, section 2217, a section pertaining to involuntary trusts. We are advised of no cogent reason why, if there be present here the requisite elements of a trust relationship, that it need be labeled either as express, involuntary, resulting or otherwise. Courts of equity have from earliest days of the common law dealt protectively with equities arising from the multitude of interparty relationships involving trust and confidence whether arising from direct negotiating, promise, consent or by operation of law.

In the instant case there was no privity of contract between the subscribers and Bank. Bank's possession of funds paid by

the subscribers to Western and any dominion Bank was authorized to exercise over them resulted from its selection as a depository and escrow holder by Western, and the acceptance of this position by Bank, followed by ratification, appointment and direction by the Commissioner. (Corp. Code §§ 25507-25508.) This joint action by Western, Bank and Commissioner was the source of an obligation the nature and extent of which, in large measure, was defined by the conditions imposed by Commissioner upon both Western and Bank. For the purpose at hand we need not consider whether, under the circumstances, Bank was subjected to additional obligations by statute, i.e., appropriate Corporations Code sections.

To say that in order to sue Bank, under the facts of this case, anyone undertaking such action must be in privity with the subscribers or be clothed with such authority by appointment as a claims representative, is untenable. There was no privity between the subscribers and Bank and no legal relationship between them except that which arose indirectly through a combination of acts by Bank, Western and Commissioner or by operation of statutory law. Truly, the subscribers are parties in interest insofar as their conditional or contingent interest in the funds paid to Western is concerned. Nevertheless, the existence of such an interest does not dictate the conclusion that appellant, as receiver for Western, was not also a real party in interest to the subject action. Acceptance by Bank of the requirements and regulations concerning the relationship between Bank and Western in the handling of the money paid by subscribers to Western was a condition precedent to Bank's lawfully entering upon its duties as a directed and limited depository. It was in nature a contract born of an offer and acceptance. Respondent has not demonstrated by logic or authority that, under such circumstances, loss suffered by the subscribers is the single factor upon which determination of a real party in interest is to be founded.

The plaintiff in this action is "Lawrence Holzman, as receiver for Western-America Sports Enterprises, Inc." He was appointed by the court in another action brought by the Commissioner against Western. Bank, in its brief, asserts: "The validity of the receivers' appointment and the remedial powers of the commissioner are not involved in this case or in the appeal." Holzman—plaintiff and appellant—is receiver for Western not for the single purpose of representing the latter's interest, but for the multi-purpose of acting in all respects as the corporation would were it seeking in its own

behalf to carry out its equitable and legal obligations, among which would be rectification of any past malfeasance on its part, or on the part of its officers or other participating corporate agents. Neither the corporation nor its receiver can, by anything appearing in the record, be placed in the position of *direct* representative of the subscribers.

We are not convinced by argument or citation of authority that there is any legal block to the maintenance of this action by appellant as receiver for Western against Bank for its alleged involvement in the mismanagement and misapplication of the funds paid by the subscribers to Western. Indeed, Western and Commissioner, as the parties who had direct involvement or privity with Bank, are the parties through whom a right of action must derive. We can envision no ground which would support a *direct* cause of action by the subscribers against Bank. A judgment herein would cover the field and shield the Bank from its stated fear of "a multiplicity of suits and from further annoyance and vexation." Furthermore, if the subscribers are necessary parties to the action they can be joined by appropriate proceedings.

Code of Civil Procedure, section 564 and following, set forth statutory law relating to receivers. Section 568 provides, among other things: "The receiver has, under the control of the Court, power to bring and defend actions in his own name, as receiver; . . ." Section 564 lists six specific instances wherein appointment of a receiver is authorized. Subparagraph 7 provides for such appointment: "In all other cases where receivers have heretofore been appointed by the usages of courts of equity." Section 565 enumerates generally the functions of a receiver appointed upon dissolution of a corporation. Dissolution may or may not be imminent here; we are not advised. Neither are we advised of any reason why, under the circumstances here and in the absence of specific legislative mandate, the rationale legitimizing a receiver's functions should dictate a lesser scope of application. Section 565 provides that a receiver appointed upon dissolution may: ". . . collect the debts and property due and belonging to the corporation, and to pay the outstanding debts thereof, . . ." True, the funds paid by the subscribers to the corporation did not belong to the corporation in the sense that it owned the funds free of limitation. However, it did receive them into its possession and became conditional owner. It had a contingent interest. In other words, its initial possession, although inchoate, was coupled with an interest. The corporation was to

become full-fledged owner when the Commissioner's conditions were fulfilled and its stock delivered to the subscribers. To say then that the receiver cannot bring suit in this area of authority merely because Western did not ''own'' the funds seems little more than a play upon terms.

At this juncture the issue is not whether Bank is liable for its conduct, allegedly a factor in the misappropriation of the funds in question, either on the ground that it participated in the *ultra vires* acts of the officers of Western in appropriating the funds, or failed to exercise due care in the discharge of its duties created by the compact between it, Western and Commissioner, or failed to discharge similar duties imposed by statutory law. The issue before us is whether appellant, as receiver for the corporation, being free of any *pari delicto* considerations which might apply to an action brought directly by the corporation, is entitled to maintain an action against Bank asserting such liability. We interpret section 568 of the Code of Civil Procedure, defining the general powers of a receiver, to authorize the bringing of the action in question here. As contingent or conditional owner of the funds, the corporation through the receiver has an assertable interest in their recovery. As one entrusted with actual though temporary possession of subscribers' funds while in transit to Bank as interim custodian, and as an entity charged with responsibility to the subscribers for safety of their funds while its obligations to them were yet unfulfilled, the corporation has a continuing obligation to them.

Our conclusion is that appellant is clothed with legal right to maintain this action against Bank seeking resolution of the respective rights and obligations of both Western and the subscribers through Western as they result from Bank's handling of the accounts. (Generally see *Pacific Ry. Co.* v. *Wade,* 91 Cal. 449, 455 [27 P. 768, 25 Am.St.Rep. 201, 13 L.R.A. 754].)

The judgment is reversed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 26, 1967.